UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X

FRANCES E. KEARNEY,                          :          **ECF CASE**

                          Plaintiff,    :      04 Civ. 1737 (WCC)

          - against -                        :

THE COUNTY OF ROCKLAND, by C. SCOTT    :          **OPINION**
VANDERHOEF, County Executive for the               **AND ORDER**
County of Rockland, and JACQUELINE    :
STORMES, Individually and as Deputy
Director of the Department of Probation,:

                          Defendants.   :

- - - - - - - - - - - - - - - - - - - - X


**A P P E A R A N C E S :**

                                        LAW OFFICES OF JOSEPH J. RANNI
                                        **Attorneys for Plaintiff**
                                        210 Main Street
                                        Goshen, New York 10924

JOSEPH J. RANNI, ESQ.

          Of Counsel



                                        JASON & NESSON, L.L.P.
                                        **Attorneys for Defendants**
                                        100 Red Schoolhouse Road
                                        Chestnut Ridge, New York 10977

CHARLOTTE G. SWIFT, ESQ.

          Of Counsel

**CONNER, Senior D.J.:**

Plaintiff Frances E. Kearney commenced this action against defendants the County of Rockland (the "County") and Jacqueline Stormes, the County Deputy Director of the Department of Probation, in her individual and official capacities, (collectively, the "defendants"). Plaintiff alleges that defendants discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the New York State Human Rights Law (the "NYSHRL"), N.Y. EXEC. LAW §§ 290 *et seq.* Plaintiff also asserts claims under 42 U.S.C. § 1983, for discrimination in violation of the Equal Protection Clause and for retaliation for the exercise of her First Amendment rights, and a state law claim for intentional infliction of emotional distress. Defendants now move for summary judgment pursuant to FED. R. CIV. P. 56 to dismiss the Complaint.[1] For the reasons stated hereinafter, defendants' motion for summary judgment is granted.

## BACKGROUND

I.     <u>Brief Factual Background</u>[2]

Plaintiff was hired on January 1, 1996 and employed by the County as a probation officer with the County Department of Probation (the "Probation Department" or "Department") at all times

---

[1] All references to the Complaint are to plaintiff's Verified Complaint.

[2] As discussed in more detail below, plaintiff's Complaint is exceedingly vague and the parties' Memoranda of Law and Rule 56.1 Statements have done little to clarify the Court's understanding of the facts of this case. Consequently, we set forth below a brief recitation of only the factual background that is necessary for the disposition of the present motion. This factual information is gleaned from the Complaint, as well as the parties' evidentiary submissions.

relevant to this action. On two relevant occasions, once in November of 2002 and again in April of 2003, the County promoted a probation officer within the Probation Department to the position of Senior Probation Officer. (Complt. ¶¶ 8-9.) Plaintiff was not selected for promotion on either occasion. (*Id.*)

Plaintiff claims that Juan Del Pilar, who was promoted in November of 2002, was "an individual younger than plaintiff and with less experience." (*Id.* ¶ 8.) However, defendants have offered evidence, which plaintiff has not disputed, establishing that plaintiff is only four years older than Del Pilar and that he was hired before plaintiff, in August of 1987.[3] (*Id.*) Plaintiff also claims that she was "better qualified" and had greater seniority than other individuals in the Probation Department who were promoted on various occasions, namely Mary Burke, Laureen Connelly, James Gould and Margaret Mackey. (Complt. ¶ 8; Pl. Mem. Opp. Summ. J. at 1.)

Prior to early 2003, plaintiff was assigned to work in the Juvenile Unit of the Probation Department. (Complt. ¶ 9.) In 2002, the Probation Department began experiencing personnel shortages due to the unexpected retirement of several Probation Officers. (Defs. Rule 56.1 Stmt. ¶¶ 63-73.)[4] During this time, all of the officers within the Probation Department were required to help complete the work for all of the units within the Department. (*Id.* ¶¶ 73-78.) As a result, in approximately February of 2003, plaintiff was reassigned to work in the Criminal Unit of the Probation Department. (Complt. ¶ 9.) Plaintiff claims that this action was taken to discriminate

---

[3] According to the County's personnel records, plaintiff was born on August 19, 1949, and Del Pilar was born on June 6, 1953. (4/29/05 Murtha Aff. ¶ 7, Exs. A, B.)

[4] We acknowledge that plaintiff disputes the majority of defendants' Rule 56.1 Statement, however, she does not submit any evidence to the contrary.

against her on the basis of her age or to retaliate against her for complaining of discrimination.[5] (*Id.*) Plaintiff was not the only Probation Officer to be reassigned to work in the Criminal Unit. (Defs. Rule 56.1 Stmt. ¶ 104.)

Plaintiff also contends that County officials took the following actions to discriminate or retaliate against her and that these actions were taken "willfully and maliciously to cause emotional distress": (1) Stormes pushed plaintiff during an altercation; (2) Joseph Foreman, plaintiff's supervisor, yelled at plaintiff in a hostile manner in front of co-workers and closed a paper manila file folder "in close proximity" to her face; and (3) she was denied time off. The Complaint does not indicate when these events allegedly occurred. (Complt. ¶ 10.)

Plaintiff provides the following allegation to support her claims against Stormes and the County under 42 U.S.C. § 1983:

> The failures to Promote and successive retaliatory conduct demonstrates [sic] a severe and pervasive pattern and practice of discriminatory conduct to deny Plaintiff a promotion and compel her wrongful termination. A sheet has been distributed relative to those who would be 'for' or 'against' Ms. Karen Damiani's appointment. From a brief review of this signature list, there appears to be a possible pattern that the individuals 'for' appointment received better job opportunities than those who were 'against', which included Plaintiff. Consequently, the motivating factor, the failure to provide Plaintiff equal protection and/or equal opportunity is motivated by her age and/or in retaliation for having complained thereof.

(*Id.* ¶ 12.)

The Complaint makes no reference to any charges of discrimination filed by plaintiff with the Equal Employment Opportunities Commission (the "EEOC") or the County Office of Employee

---

[5] According to plaintiff, the reassignment was calculated to lead to her wrongful termination because she was not properly trained for her new position. However, nothing in the Complaint or in the evidentiary submissions by the parties indicates that the County ever terminated plaintiff. (Complt. ¶ 9.)

Rights and Equity Compliance (the "OER"). Plaintiff also neglected to plead compliance with the Notice of Claim provisions of N.Y. COUNTY LAW § 52. Defendants, however, provided copies of plaintiff's charges to the EEOC and the OER and the Notice of Claim served upon the County in connection with this action. These documents, along with plaintiff's deposition testimony, provide some indication of when the events complained of by plaintiff are alleged to have occurred.

On May 18, 2000, plaintiff filed a "Complaint of Discrimination, Harassment or Retaliation" with the OER (the "2000 OER Complaint"). (6/11/04 Vasquez Aff., Ex. B.) In the 2000 OER Complaint, plaintiff alleged that she was discriminated against by Stormes and other County officials between the dates of July 23, 1999 and March 9, 2000. (*Id*.) Plaintiff did not specify what type of discrimination occurred. She stated only that Stormes "pushed" her and that she was treated badly at a Civil Service Employees Association ("CSEA") grievance meeting. (*Id*.) Plaintiff later discontinued the 2000 OER Complaint against Stormes and two others County officials. (*Id*., Ex. C.) On February 8, 2001, the OER dismissed plaintiff's 2000 OER Complaint against the remaining respondents. (*Id*., Ex. D.)

On February 28, 2003, plaintiff filed an "CSEA Grievance Form," challenging Stormes's decision to transfer her to the Criminal Unit. (6/10/04 Stormes Aff., Ex. B.) The CSEA Grievance Form indicates that the decision to transfer plaintiff was made on January 31, 2003 and that the transfer became effective on February 4, 2003. According to defendants, on February 5, 2003, an OER complaint form was forwarded to plaintiff at her request. (6/11/04 Vasquez Aff. ¶ 21.) However, plaintiff never returned the completed complaint form to the OER or told the OER why she had requested the form. (*Id*.)

In a letter dated April 25, 2003, plaintiff filed another complaint with the OER (the "2003 OER Complaint"). (*Id*., Ex. G.) In the 2003 OER Complaint, plaintiff alleged that on April 25, 2003, Foreman shouted at her in a hostile manner. (*Id*.) She did not allege that this act was committed for discriminatory reasons. (*Id*.) The OER subsequently dismissed the 2003 OER Complaint concluding that no human rights violations had occurred. (*Id*., Ex. H.)

On July 7, 2003, plaintiff filed a charge with the EEOC (the "EEOC Charge") naming the County as respondent. (6/11/04 Swift Aff., Ex. B.) In the EEOC Charge, plaintiff alleged that she was denied a promotion as a result of age discrimination and that Del Pilar, a younger, less experienced candidate, was promoted instead. Plaintiff also alleged that Stormes transferred her to the Criminal Unit for discriminatory or retaliatory reasons. Plaintiff provided the Court with a copy of an amendment to the EEOC Charge filed on November 11, 2003, wherein plaintiff alleges that Burke, Connelly, Gould and Mackey were promoted over plaintiff for unspecified discriminatory reasons.[6] (7/12/04 Ranni Aff., Ex. 13.)

In July 2003, plaintiff served the County with a Notice of Claim dated July 9, 2003. (6/11/04 Swift Aff., Ex. C.) The Notice of Claim provides:

> The claim is for compensation to the Claimant for discrimination and retaliation through the actions of the [County] . . .[its] agents, servants or employees, the denial of promotion [sic], initiation of false claims, abuse of process including improper disparate discipline, lack of good faith, unpublished complaint procedure [sic] and other conduct.

(*Id*.)

---

[6] Although the amendment to the EEOC Charge bears no date stamp indicating that it was received by the EEOC, defendants neither contend that the EEOC did not receive it, nor that it was fabricated for use in this litigation. (Defs. Mem. Fur. Supp. Mot. Dismiss at 5.)

At some point during the summer of 2003, plaintiff informed the County that she allegedly suffers from a learning disability known as attention deficit disorder. Plaintiff also requested that the County provide her with certain accommodations and a job coach under the Americans with Disabilities Act (the "ADA").[7] (5/3/05 Ranni Aff., Ex. 1.) In connection with plaintiff's request, she submitted to a psychiatric evaluation performed by Dr. Alan J. Tuckman[8]. (*Id*.) Dr. Tuckman found no evidence that plaintiff suffers from a learning disability that would negatively impair her job performance or require any accommodations at work. (*Id*.) Consequently, the County denied plaintiff's accommodation request and refused to place her on involuntary leave. (*Id*.) Plaintiff subsequently filed an EEOC charge, unrelated to the present action, alleging that the County had discriminated against her in violation of the ADA. (*Id*.)

## II.    Procedural History

Defendants previously moved to dismiss plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction and, alternatively, pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted. In an Opinion and Order dated

---

[7] In support of plaintiff's request for accommodations she submitted a letter from her psychiatrist, Dr. David Corwin, dated March 12, 2003 and addressed to "To Whom it May Concern." (Defs. Mem. Supp. Summ. J., Ex. S-1.) The letter states that plaintiff is under Dr. Corwin's care for treatment of attention deficit disorder which affects her ability to perform difficult tasks and learn new skills. (*Id*.)

[8] Dr. Tuckman consulted with Dr. Corwin as part of his evaluation of plaintiff. (*Id*.) According to Dr. Tuckman's report, Dr. Corwin was not aware that plaintiff had used his letter as part of her application for disability accommodations. (*Id*.)

September 22, 2004 (the "9/22/04 Opinion") this Court denied defendants' Rule 12(b)(1) motion[9] and granted in part defendants' Rule 12(b)(6) motion. However, at that time we declined to consider all of the grounds for dismissal raised by defendants in their Rule 12(b)(6) motion and gave notice that we would treat it as a motion for summary judgment pursuant to Rule 56.[10] Accordingly, we will now address those remaining issues herein.[11]

## DISCUSSION

### I.  Standard of Review on Motion for Summary Judgment

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether summary

---

[9] In the 9/22/04 Opinion we concluded that although the Complaint was poorly drafted and extremely vague, when read together with plaintiff's administrative charges, it provided "fair notice" of her claims against defendants. (9/22/04 Opinion at 8.)

[10] We note that defendants' remaining arguments required reference to documents that this Court could not properly consider on a Rule 12(b)(6) motion. Accordingly, FED. R. CIV. P. 12(b) provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and pertinent to such a motion by Rule 56.

[11] Prior to the disposition of the present motion, the parties were given an opportunity to submit additional evidence and file supplemental briefs.

judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id*. at 255. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994).

## II.    Plaintiff's New Allegations

Initially, we would like to note that for purposes of responding to the present motion plaintiff had the benefit of our 9/22/04 Opinion, which laid out in considerable detail the elements of the claims that the Court would consider on the converted motion for summary judgment and specifically directed the parties to submit further briefing and evidence on those issues. (9/22/04 Opinion at 12-19.) However, plaintiff, rather than address defendants' arguments with respect to her original claims, chose to devote her present opposition papers almost entirely to introducing a brand new allegation. Consequently, as a result of plaintiff's exceedingly vague Complaint and her almost entirely irrelevant opposition papers, the Court is often left to surmise the substance of plaintiff's arguments.

In plaintiff's Memorandum of Law opposing the present motion, she asserts, for the first time, a hostile work environment claim under Title VII. (Pl. Mem. Opp. Summ. J. at 16.) This

allegation was not made in plaintiff's Complaint or her EEOC charge.[12]  Accordingly,  this Court

will not consider her Title VII claim because nothing in either filing put defendants on notice of this

new allegation.[13]  *See Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 Civ. 10542, 2004 U.S.

Dist. LEXIS 25336, at *20-21 (S.D.N.Y. Dec. 15,  2004) ("A complaint cannot be amended merely

by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and

claims should not be considered . . . .")*; see also Rochester v. Blue Cross & Blue Shield*, No. 98 Civ.

2436, 2000 U.S. Dist. LEXIS 10550, at *17-18 (S.D.N.Y. June 30, 2000)*; Beckman v. U.S. Postal

Serv.,* 79 F. Supp. 2d 394, 408 (S.D.N.Y. 2000) (noting that claims not pleaded in the complaint will

not be considered in opposition to summary judgment); *Bonnie & Co. Fashions, Inc. v. Bankers

Trust Co.*, 170 F.R.D. 111, 119 (S.D.N.Y. 1997) (noting that "it is inappropriate to raise new claims

for the first time in submissions in opposition to summary judgment").

We recognize that it is not necessary for a complaint to correctly plead every legal theory

supporting the claim, however,

> at the very least, plaintiff must set forth facts that will allow each party to tailor its
> discovery to prepare an appropriate defense. Because a failure to assert a claim until
> the last minute will inevitably prejudice the defendant, courts in this District have
> consistently ruled that it is inappropriate to raise new claims for the first time in
> submissions in opposition to summary judgment.

*Rochester*, 2000 U.S. Dist. LEXIS 10550, at *17-18 (quoting *Beckman*, 79 F. Supp. 2d at 408)

(internal quotations omitted).

_____

[12] In fact, plaintiff's Memorandum of Law submitted in opposition to defendants' motion
to dismiss, specifically laid out each of the six claims contained in her Complaint.  (Pl. Mem.
Opp. Mot. Dismiss at 6-8.)  Noticeably absent from this discussion is any mention of a Title VII
hostile work environment claim.  (*Id.*)

[13] We note that plaintiff did not seek leave to amend her Complaint to assert this new
claim.

We will now address defendants' motion for summary judgment with respect to each of the six claims alleged in plaintiff's Complaint.

### III.    Plaintiff's Age Discrimination Claims

In Count I of the Complaint, plaintiff asserts a claim against the County for age discrimination in violation of the ADEA.  (Complt. ¶ 14.)  In Count II of the Complaint, plaintiff asserts a claim against Stormes under the NYSHRL for age discrimination.[14]  (Complt. ¶ 16.) Plaintiff alleges that as a result of this age discrimination: (1) she was reassigned to the Criminal Unit; and (2) she was twice denied a promotion to Senior Probation Officer.  (*Id.* ¶¶ 8-11.)

Under the ADEA, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This prohibition protects individuals who are "at least 40 years of age." 29 U.S.C. § 631(a). Similarly, under the NYSHRL, it is unlawful discriminatory practice for "an employer . . . to refuse to hire or employ or license or to bar or to terminate from employment an individual eighteen years of age or older, or to discriminate against such individual in promotion, compensation or in terms, conditions, or privileges of employment, because of such individual's age." N.Y. Exec. Law § 296(3-a)(a).

---

[14] We note that with respect to Stormes in her individual and official capacity, Count I and Count IV of plaintiff's Complaint were already dismissed by this Court in our 9/22/04 Opinion because there is no individual liability under the ADEA. *See Brown v. Lawrence Stevens Fashions, Inc.*, No. 03 Civ. 2822, 2004 U.S. Dist. LEXIS 5354, at *2 (S.D.N.Y. Mar. 30, 2004) (holding that plaintiff cannot bring suit against supervisors under the ADEA).

It is well-settled that ADEA and NYSHRL claims are properly analyzed under the familiar burden-shifting standard applicable to Title VII employment discrimination claims first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See, e.g., Abdu-Brisson v. Delta Airlines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Under that framework:

> A plaintiff must first establish a prima facie case of age discrimination . . . . Once the plaintiff has made out a prima facie case, the employer is required to offer a legitimate, nondiscriminatory business rationale for its actions . . . . If the employer articulates such a reason, the presumption of age discrimination dissolves, and the burden shifts back to the plaintiff to prove that the employer's stated reasons are merely pretextual and that age discrimination was the true reason for the adverse employment action.

*Id.* (citations omitted).

To establish a *prima facie* case of age discrimination, plaintiff must show that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of age discrimination. *See id*. at 466-67 (discussing *McDonnell Douglas,* 411 U.S. at 802).

Although plaintiff's burden to establish a *prima facie* case is not onerous, she must nonetheless establish her case by a preponderance of the evidence and "speculative, conclusory allegations will not suffice to withstand a motion for summary judgment." *Hueser v. Metro. Transit Auth.*, No. 98 Civ. 7810, 1999 U.S. App. LEXIS 7655, at *3-4 (2d Cir. Apr. 13, 1999); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (noting that "the party opposing summary judgment may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the adverse party's pleading") (internal citations and quotations omitted). Therefore, to survive summary judgment, plaintiff must present evidence that would be sufficient to support a jury verdict

in her favor.  *See Goenaga*, 51 F.3d at 18.

### A.    Plaintiff's Reassignment

Defendants contend that plaintiff has failed to establish a *prima facie* case of age discrimination based on the Department's decision to reassign her to work in the Criminal Unit because: (1) the reassignment does not constitute an adverse employment action; and (2) even if the reassignment was an adverse employment action, it did not occur under circumstances giving rise to an inference of age discrimination.  (Defs. Mem. Supp. Summ. J. at 9.)  First, we will consider whether plaintiff's reassignment to the Criminal Unit was an adverse employment action.

"A plaintiff sustains an adverse employment action if he endures a 'materially adverse change' in the terms and conditions of employment."  *Galabya v. N.Y. City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000) (citing *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)).  To be "materially adverse" a change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Galabya*, 202 F.3d at 640 (quoting *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).  Examples of a materially adverse change include, but are not limited to, "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  *Id.*

Plaintiff alleges that her transfer from the Juvenile Unit to the Criminal Unit was an adverse employment action because it prevented her from being considered for promotions that were to become available in the Juvenile Unit and also because the new position involved "extremely difficult" duties for which she was untrained and, thus, destined to fail.  (Pl. Mem. Opp. Summ. J.

at 13.)

Plaintiff is correct that an involuntary transfer[15] may be considered an adverse employment action if it is "tantamount to a demotion" or results in a change in responsibilities so significant as to constitute a setback to one's career. *Galabya*, 202 F.3d at 641 (citing *Patrolmen's Benevolent Ass'n v. City of New York*, 74 F. Supp. 2d 321 (S.D.N.Y. 1999) (quotations omitted)). However, plaintiff's conclusory allegations are not self-evident and she has provided no evidence to support them. To the contrary, plaintiff testified that she was not aware of any policy or procedure within the Probation Department by which appointments to the position of Senior Probation Officer are related to a person's length of service in a particular unit. (Pl. Dep. at 60-61.) Plaintiff also testified that in only six out of seventeen promotions made in approximately the last ten years was a Probation Officer promoted to Senior Probation Officer, or a Senior Probation Officer promoted to Supervising Probation Officer within the same unit in which he or she had been working immediately prior to the promotion. (*Id.* at 110-11.)

Furthermore, plaintiff admits that after she was transferred to the Criminal Unit she continued to work in the same building and at the same desk where she had worked in the Juvenile Unit and that the only changes in her responsibilities were: (1) she was occasionally required to go to the Assistant District Attorney's office, which is located in the same building as the Probation Department; (2) she was occasionally required to go to the jail, which was located across a parking lot from the Probation Department, to gather information; and (3) she was required to prepare written

_____

[15] Plaintiff claims that her transfer from the Juvenile Unit to the Criminal Unit was involuntary. However, she admitted that she requested a transfer to the Criminal Unit in 2001. (Pl. Dep. at 190.) Plaintiff claims that she was never advised that her request to transfer to the Criminal Unit was still active. However, plaintiff also testified that she did not withdraw her request for a transfer to the Criminal Unit. (*Id.* at 169.)

reports for criminal court instead of family court and therefore needed to use a different form.  (*Id.* at 187-88; Defs. Rule 56.1 Stmt. ¶ 59.)

Plaintiff has failed to proffer any evidence demonstrating that her reassignment to the Criminal Unit resulted in a change in her job responsibilities "so significant as to constitute a setback" to her career, or that her chances for promotion were in any way affected by the transfer. Therefore, because plaintiff has failed to create a material issue of fact regarding whether her reassignment to the Criminal Unit was an adverse employment action, she is unable to establish a *prima facie* case for age discrimination in violation of the ADEA or the NYSHRL on the basis of her reassignment.  Accordingly, these claims are dismissed.  We will now consider whether plaintiff can establish a *prima facie* case based on defendants' alleged failure to promote her to the position of Senior Probation Officer.

### B.      Failure to Promote Plaintiff

Defendants contend that plaintiff has failed to establish a *prima facie* case of age discrimination based on the County's decision not to promote her to the position of Senior Probation Officer in either November 2002 or April 2003 because: (1) plaintiff is unable to show that she was qualified for the promotion; and (2) even if plaintiff can show that she was qualified for the promotion, she is unable to demonstrate that the County refused her the promotion under circumstances giving rise to an inference of discrimination.  (Defs. Mem. Supp. Summ. J. at 11.) Based on our review of the evidentiary record, we have serious doubts as to whether plaintiff has provided sufficient evidence to demonstrate that she was qualified for promotion to the position of Senior Probation Officer.

Plaintiff claims that she was "better qualified" than others who were promoted to the position of Senior Probation Officer, "as demonstrated by her performance reviews, complimentary letters, training, having passed her civil service exam" and seniority. (Pl. Mem. Opp. Summ. J. at 10.) Plaintiff also claims that she "was better qualified or had more experience and seniority than any candidate." (*Id*. at 1.) However, plaintiff has failed to produce sufficient evidence supporting these claims and, in fact, admits that she does not have seniority greater than anyone in the Probation Department.[16] (*Id*. at 43.) Defendants have submitted evidence to the contrary which indicates that plaintiff's work was standard at best and that she was considered by her supervisors to be difficult to communicate with and generally uncooperative.[17] (Defs. Mem. Supp. Summ. J., Ex. Y.) Accordingly, plaintiff has failed to demonstrate that she was better qualified or had more seniority than any of the persons who received the challenged promotions.

---

[16] Plaintiff first testified that she has seniority greater than Mackey, but later admitted that she did not know the date that Mackey was hired, and that the only basis for her conclusion was a list that she observed relating to overtime. (Pl. Dep. at 40.) Furthermore, according to records submitted by defendants from the County Department of Personnel, Mackey became employed as a Probation Officer for the County on March 6, 1995, more than nine months prior to plaintiff's January 1, 1996 date of hire. (Defs. Mem. Supp. Summ. J., Ex. J.) Mackey's hire date was confirmed by Jean Murtha, the Coordinator of Personnel for the County, in an Affidavit. (7/29/04 Murtha Aff. ¶ 11(b).)

[17] Plaintiff submitted several complimentary letters that she maintains support her claim that she was "better qualified" for the promotion to Senior Probation Officer. (Pl. Aff., Ex. 5.) However, we find these letters unpersuasive and insufficient to create a material issue of fact, as none of the letters were specific to the promotion and contained only general positive statements about plaintiff. Also, none of the letters were written by individuals in a supervisory role with respect to plaintiff. Furthermore, plaintiff admitted that she solicited these letters in case she needed them in the event that she did not perform as well after her reassignment to the Criminal Unit, thereby negating their evidentiary value for supporting the premise that she was "better qualified.". (Pl. Dep. at 166, 193.)

Moreover, plaintiff herself had concerns regarding whether she was qualified for the April 2003 promotion to Senior Probation Officer as evidenced by the fact that during the spring or summer of 2003 plaintiff informed the County that she suffered from attention deficit disorder and requested a reduced case load, a job coach and other accommodations. The job description for Senior Probation Officer provides that the position involves "work of a complex nature" and increased "responsibility for specialized assignments and complex duties in the areas of intake, investigation, supervision and training." (*Id*., Ex. C.) However, in the March 12, 2003 letter from Dr. Corwin, which plaintiff submitted with her accommodations request, he explicitly states that he believes plaintiff suffers from a mental disorder which "significantly restricts her ability to perform major tasks . . . results in a difficulty in learning rapidly new skills pertinent to this position . . . [and] requires a reduced case load . . . ." (*Id*., Ex. S-1.) This indicates that at the time of the April 2003 promotion both plaintiff and her doctor believed that she would have trouble completing the work required of her in the Criminal Unit, let alone the increased responsibility and complex duties that are required of a Senior Probation Officer. Accordingly, we conclude that plaintiff has failed to produce sufficient evidence to support her claim that she was wrongfully denied a promotion to a position for which she was otherwise qualified.

However, even if plaintiff were able to survive summary judgment on that point, she is still unable to establish a *prima facie* case because she has presented absolutely no evidence to support her claim that the County's failure to promote her occurred under circumstances giving rise to an inference of age discrimination. In fact, plaintiff has admitted that she has no such evidence and that the sole basis for her claims of age discrimination is an idea she had after "doing some research" and reading a book about discrimination in the workplace. (Pl. Dep. at 95-98.) Therefore, because

plaintiff has not come forward with any, let alone sufficient, evidence to support a jury verdict in her favor, she has failed to establish a *prima facie* case for age discrimination in violation of the ADEA and the NYSHRL. Accordingly, defendants' motion for summary judgment is granted with respect to Count I and Count II of the Complaint.

---

## IV.  Plaintiff's Retaliation Claims Under the ADEA and the NYSHRL

In Count IV of the Complaint, plaintiff asserts a claim against the County for retaliation in violation of the ADEA. In Count V of the Complaint, plaintiff asserts a claim against Stormes for retaliation in violation of the NYSHRL.

To establish a *prima facie* case for retaliation in violation of the ADEA and the NYSHRL, plaintiff must demonstrate the following by a preponderance of the evidence: (1) participation in a protected activity known to defendants; (2) an employment action that disadvantaged her; and (3) a causal connection between the protected activity and the adverse employment action. *See Slattery v. Swiss Reins. Am. Corp.,* 248 F.3d 87, 94 (2d Cir. 2001). If plaintiff makes out her *prima facie* case for retaliation the burden shifts to defendants to articulate a legitimate non-discriminatory reason for taking the adverse employment action. *Id*. at 95. If defendants succeed, the burden "shifts back to plaintiff to demonstrate pretext." *Id*.

Defendants contend that plaintiff has failed to establish a *prima facie* case for retaliation because even if she is able to demonstrate participation in a protected activity known to defendants, she is unable to show that there was a causal connection between the protected activity and the adverse employment action. We agree.

As mentioned *supra*, in Part II., the Complaint is vague and plaintiff's Memorandum of Law in Opposition to the present motion has done little to clarify the allegations. Consequently, based on plaintiff's deposition testimony, *inter alia*, we are left to surmise the following. The protected activities in which plaintiff allegedly engaged are: (1) the 2000 OER Complaint, in which plaintiff alleged that Stormes had pushed her; and (2) the charge plaintiff filed with the EEOC in July of 2003. The adverse employment actions that plaintiff allegedly suffered are: (1) the County's failure to promote her in November of 2002; (2) the County's failure to promote her in April of 2003; and (3) plaintiff's reassignment to the Criminal Unit in early 2003. (Pl. Dep. at 122-23.)

However, plaintiff testified that all of the aforementioned alleged adverse employment actions occurred before she filed her charge with the EEOC in July 2003; therefore, such actions could not have been in retaliation for filing the EEOC charge. (*Id*. at 112-13, 118-23.) Additionally, plaintiff testified that she has made no allegation concerning any adverse employment action that occurred after she filed the July 2003 EEOC charge. (*Id*. at 119.) Accordingly, plaintiff's filing of her EEOC charge in July of 2003 cannot be the basis for any of her current retaliation claims.

Furthermore, plaintiff has submitted no evidence which could lead a trier of fact to reasonably conclude that any of the alleged adverse employment actions occurred in retaliation against plaintiff for filing the 2000 OER Complaint. In fact, plaintiff testified that she has no reason to believe that Stormes was even aware that plaintiff had made a complaint against her to the OER. (*Id*. at 88-94.) Therefore, because plaintiff is unable to demonstrate a causal connection between her 2000 OER Complaint and the alleged adverse employment actions, she has not established a *prima facie* case for retaliation in violation of the ADEA or the NYSHRL. Accordingly, defendants' motion for summary judgment is granted with respect to Count IV and Count V of the Complaint.

## V.     Plaintiff's § 1983 Claims

In Count III of the Complaint, plaintiff asserts a claim against defendants under 42 U.S.C. § 1983.  (Complt. ¶ 20.)  In the Complaint, plaintiff indicates that she is asserting her § 1983 claim to vindicate the violation of the Equal Protection Clause that allegedly occurred when defendants discriminated against her in violation of the ADEA and state anti-discrimination laws.  (*Id.* ¶ 12.) However, in her Memorandum of Law in Opposition to defendants' motion to dismiss, plaintiff indicated that she is also seeking to redress a First Amendment violation that allegedly occurred when defendants retaliated against her for writing that she was "against" the appointment of Damiani to the position of County Director of Probation on a form that was circulated within the Probation Department.  (Pl. Mem. Opp. Mot. Dismiss at 7.)  We will address each claim in turn.

### A.     Equal Protection Clause Violation

Employment discrimination claims brought pursuant to 42 U.S.C. § 1983 to vindicate alleged violations of the Equal Protection Clause are evaluated under the same analytical procedure as claims brought under Title VII and the ADEA.  *See, e.g.*, *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000); *Sorlucco v. N.Y. City Police Dep't*, 888 F.2d 4, 7 (2d Cir. 1989). Therefore, plaintiff's § 1983 claim premised on equal protection is inextricably intertwined with plaintiff's discrimination claims against the County under the ADEA and against Stormes under the NYSHRL.  Accordingly, because we have dismissed those claims, for the reasons discussed *supra,* in Part II., we must also dismiss plaintiff's § 1983 claim premised on equal protection violations. However, plaintiff's First Amendment retaliation claim requires a different analysis, which we will now consider.

19

## B.     First Amendment Retaliation

To state a claim under § 1983 for retaliation in violation of the First Amendment plaintiff must demonstrate that: (1) her speech was constitutionally protected; (2) she suffered an adverse employment action; and (3) a casual connection exists between the protected speech and the adverse employment action. *See Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004).

Defendants contend that plaintiff has failed to establish all three elements of a *prima facie* case for First Amendment retaliation. (Defs. Mem. Supp. Summ. J. at 22.) Defendants also contend that qualified immunity bars all of plaintiff's § 1983 claims against Stormes. (*Id.* at 23.) First, we will consider whether plaintiff has established a *prima facie* case.

The speech that plaintiff alleges is constitutionally protected is a two-page document which she claims was circulated around the Probation Department in 1999. (Complt. ¶ 12.) The first page of the document is an undated[18] and unsigned letter addressed to CSEA representative Georgia Gentile which expresses support for the appointment of Karen Damiani to the position of Director of Probation. (Defs. Mem. Supp. Summ. J., Ex. K.) The second page of the document is a lined piece of paper with names listed in three different columns. All of the names are written in the same handwriting, which plaintiff admits is not hers. (*Id.*; Pl. Dep. at 77.) The first column designates those individuals who were contacted about the letter and who indicated that they would be willing to sign it. (Defs. Mem. Supp. Summ J., Ex. K; Pl. Dep. at 78-81.) The second column consists of those individuals who were contacted about the letter and who indicated that they would not be

---

[18] The letter is undated; however, plaintiff testified that the letter was attached to and referenced in another letter from Laurie Folgelman addressed to "All Staff," which was dated September 28, 1999. (Pl. Dep. at 74-78; Defs. Mem. Supp. Summ. J., Ex. K.) Plaintiff also testified that the unsigned letter, was circulated in September of 1999. (Pl. Dep. at 76.)

willing to sign it. (*Id*.) The third column designates those individuals who could not be reached regarding the letter. (*Id*.) Plaintiff's name appears in this third column, and she admits that she never signed the document.[19] (*Id*.) Plaintiff also admits that her name does not appear on the document as a person who was either opposed to signing the letter or willing to sign the letter, but only as a person who could not be reached regarding the letter. (*Id*. at 132, 140-41.)

Plaintiff claims that the County's failure to promote her in November of 2002 was in retaliation for the appearance of her name on the aforementioned list.[20] To begin, we have serious doubts as to whether or not this document (the letter and list) constitutes protected speech with respect to plaintiff. The document could reasonably be viewed as protected speech with respect to the individuals whose names were listed as expressing a position regarding whether or not they would sign the letter in support of Damiani. However, plaintiff's name appears on the list only as a person who could not be reached regarding the letter and, therefore, as a person who had not expressed a position regarding the letter or the appointment of Damiani to Probation Director.

In any case, even if plaintiff were able to show that her name listed on the document constitutes protected speech in some way, she has failed to demonstrate a causal connection between the appearance of her name on the list and the County's failure to promote her in November of 2002. For example, plaintiff maintains that she was not promoted because her name was not listed in the column of individuals who indicated that they would sign the letter supporting Damiani. (Complt. ¶ 12.) However, plaintiff admits that several individuals were promoted even though their names

---

[19] In fact, plaintiff testified that none of the individuals whose names appear on the list actually signed the list. (Pl. Dep. at 77.)

[20] Plaintiff testified that her name appearing on the list had no bearing on whether she was denied the promotion in April of 2003. (*Id*. at 146.)

were listed in the column indicating that they would not sign the letter supporting Damiani. (Pl. Dep. at 140-47.) Moreover, plaintiff admits that she has no basis for her assertion that any of the individuals who were in charge of the promotion relied on this list in any way for purposes of deciding who was selected for promotion to Senior Probation Officer in November of 2002. (*Id.* at 83, 132-146.)

Accordingly, plaintiff has failed to establish a *prima facie* case for retaliation under § 1983 in violation of the First Amendment and defendants' motion for summary judgment is granted with respect to Count III of the Complaint.[21]

## VI.    **Plaintiff's Claim for Intentional Infliction of Emotional Distress**

Lastly, plaintiff brings a pendent state law claim against defendants for intentional infliction of emotional distress ("IIED"), claiming that "[b]y reason of the Defendants unconscionable, reckless, malicious and manipulative misrepresentations to Plaintiff, Defendant [sic], through their misfeasance, malfeasance, and nonfeasance, caused to be inflicted upon Plaintiff emotional distress." (Complt. ¶ 53.) Defendants contend that plaintiff is unable to establish a *prima facie* case for IIED because she has "failed to allege, let alone demonstrate, that she suffered any measurable damages as the result of the purported conduct . . . ."[22] (Defs. Mem. Supp. Summ. J. at 24.)

---

[21] Because we have determined that plaintiff has not established a *prima facie* case we need not address defendants' qualified immunity argument with respect to Stormes.

[22] We note that defendants, in their Memorandum of Law in Support of their motion to dismiss, argued that plaintiff's IIED claim against Stormes in her individual capacity was time-barred. However, defendants have not addressed this argument with respect to the present motion; therefore, we will assume that defendants have withdrawn this contention.

The tort of intentional infliction of emotional distress is highly disfavored under New York law and in the past was not even recognized by New York courts. *See Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 345-46 (S.D.N.Y. 2000) (citing *Howell v. New York Post*, 81 N.Y.2d 115, 119-20, 612 N.E.2d 699, 596 N.Y.S.2d 350, 352 (1993); *Fischer v. Maloney*, 43 N.Y.2d 553, 558, 373 N.E.2d 1215, 402 N.Y.S.2d 991, 992-93 (1978)). Under New York law, a party claiming IIED must prove: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a casual connection between the conduct and the injury; and (4) severe emotional distress. *See Gay v. Carlson*, 60 F.3d 83, 89 (2d Cir. 1995) (internal quotation omitted). These elements are applied very strictly. *See Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir. 1985) (recognizing that "New York courts have been very strict in applying these principles").

New York courts have set a very rigorous standard for adjudging whether conduct is sufficiently "extreme and outrageous" to be actionable, and it is well-settled that the court may decide this issue as a matter of law. *See Howell*, 81 N.Y.2d at 121 (noting that "[i]n practice, courts have tended to focus on the outrageousness element" because it is the one "most susceptible as a matter of law"). Accordingly, recovery is limited to cases where the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Fischer*, 43 N.Y.2d at 558.

Applying this rigorous standard to the case at bar, we find that plaintiff's claim for IIED fails as a matter of law. Even if all factual ambiguities are resolved and all justifiable inferences are drawn in plaintiff's favor, as must be done in deciding a motion for summary judgment, no reasonable jury could conclude that defendants' conduct was beyond all possible bounds of decency.

Despite being specifically directed by this Court in our 9/22/04 Opinion to do so (9/22/04 Opinion at 23), plaintiff has introduced absolutely no evidence of conduct sufficiently "outrageous" to satisfy the stringent New York standard for a claim of IIED. In fact, plaintiff's Memorandum of Law in Opposition to the present motion is completely devoid of any mention of her IIED claim. Accordingly, we grant defendants' motion for summary judgment with respect to Count VI of the Complaint.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted and plaintiff's Complaint is dismissed in its entirety, with prejudice but without costs.

SO ORDERED

Dated: White Plains, New York
June 15, 2005

_William C. Conner_
Sr. United States District Judge